**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| **PAUL PHILLIPS and LEWIS GARDNER,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **No. 14 C 9372** |
| **v.** | ) | |
| | ) | |
| **CITY OF CHICAGO; CHICAGO POLICE** | ) | **Judge Rebecca Pallmeyer** |
| **OFFICERS ANTHONY VILLARDITA #20849,** | ) | |
| **THOMAS JOHNSON #20820, BRIAN KILLACKY** | ) | **Magistrate Judge Jeffrey** |
| **#20748, TERRY O'CONNOR #20831, RICK ABREU** | ) | **Gilbert** |
| **#20796, ROBERT DELANEY #20383, ROBERT** | ) | |
| **HERYMAN # 14984, SEAN GLINSKI #3122,** | ) | |
| **MICHAEL BERTI #12881, and UNIDENTIFIED** | ) | |
| **EMPLOYEES OF THE CITY OF CHICAGO** | ) | **JURY DEMAND** |
| | ) | |
| **Defendants.** | ) | |

**FIRST AMENDED COMPLAINT**

Plaintiffs Paul Phillips and Lewis Gardner, by their undersigned attorneys, complain of

Defendants, the City of Chicago; Chicago police officers Anthony Villardita, Thomas Johnson,

Brian Killacky, Terry O'Connor, Rick Abreu, Robert Delaney, Robert Heryman, Sean Glinski

and Michael Berti; and unidentified employees of the City of Chicago, (collectively, "Defendant

Officers"), as follows:

**INTRODUCTION**

1.      Plaintiffs, who were entirely innocent, were wrongly convicted of a brutal homicide

because of the fabrication and coercion of inculpatory evidence, and the hiding of exculpatory

evidence, by the Defendants sued in this action.

2.      Lewis Gardner was arrested for the crime on December 2, 1992, at the age of 15, and

he spent the next 15 years in jail and prison, followed by 3 more years on mandatory supervised

release and several more years suffering the stigma of being a convicted murderer, before he was exonerated in June of 2014.

3. Paul Phillips was arrested for the crime on December 3, 1992, at the age of 17, and he spent the next 15 years in jail and prison, followed by 3 more years on mandatory supervised release and several more years suffering the stigma of being a convicted murderer, before he was exonerated in June of 2014.

4. On August 14, 2014, each Plaintiff was granted a Certificate of Innocence by the Circuit Court of Cook County.

5. The unconstitutional conduct complained of herein was a part of longstanding, widespread and interrelated Chicago Police Department patterns and practices, inter alia, of unlawfully coercing confessions, often from young African-American men such as the Plaintiffs and their co-defendants in the criminal action, in order to close unsolved cases, through abusive and otherwise improper methods of interrogation, by the fabrication of false inculpatory evidence, and by the withholding of exculpatory evidence from the courts, prosecutors, criminal defendants, and their attorneys.

**JURISDICTION AND VENUE**

6. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiffs' rights as secured by the United States Constitution, and under Illinois law.

7. This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. Venue is proper under 28 U.S.C. § 1391(b). The parties reside in this judicial district, and the events giving rise to the claims asserted herein occurred here.

## PARTIES

8.      Plaintiff Paul Phillips is a resident of Cook County, Illinois.

9.      Plaintiff Lewis Gardner is a resident of Lake County, Illinois

10.      At all times relevant hereto, Defendants Anthony Villardita, Thomas Johnson, Brian Killacky, Terry O'Connor, Rick Abreu, Robert Delaney, Sean Glinski and Michael Berti were police officers in the Chicago Police Department. Each is sued in his individual capacity, and each acted under color of law and within the scope of his employment.

11.      Defendant City of Chicago is an Illinois municipal corporation and was the employer of each of the Defendant Officers at all relevant times.

## FACTS

12.      On November 16, 1992, Jeffrey Lassiter and Sharon Haugabook were shot and killed in Mr. Lassiter's apartment at 910 W. Agatite in Chicago, Illinois.

13.      Plaintiffs had no involvement with the Lassiter and Haugabook murders.

14.      Defendant Officers were assigned to investigate the murders.

15.      The murders occurred within minutes of 8:43 p.m. Police arrived at the scene three minutes later and learned that a witness, Faye McCoy, saw four men leaving Mr. Lassiter's apartment building shortly after the shooting.

16.      Ms. McCoy, who knew the Plaintiffs and many of the young men who would become Plaintiffs' criminal co-defendants, knew that Plaintiffs were not among the men she saw leaving the building and that they were not in the vicinity of 910 W. Agatite at the time of the murders, and told the Defendants Officers this.

17.      Ms. McCoy told the Defendant Officers that the people she saw leaving Mr. Lassiter's apartment building were men from the West Side of Chicago who had recently been selling

drugs in the community, including someone called "Goldie."

18.     Following her initial identification, the Defendant Officers had Ms. McCoy look through an array of seven photographs of potential suspects.  Ms. McCoy identified the photograph of Dennis "Goldie" Mixon as one of the four men she saw leaving the murder scene on November 16.

19.     During the initial investigation, several other witnesses identified Mixon as a drug dealer who had recently had a physical altercation with Mr. Lassiter. The Defendant Officers knew that prior to Mr. Lassiter's murder, Mixon had taken over Mr. Lassiter's apartment in order to sell crack cocaine.

20.     As a result of these witness statements and Ms. McCoy's identification, Mixon became the Defendant Officers' prime suspect in the killings, but they were unable to locate him. The case went cold for several weeks, until then-15-year-old Plaintiff Lewis Gardner was arrested on unrelated charges.

21.     Lewis Gardner was a juvenile with an IQ of about 70.

22.     Defendant Officers Villardita, Johnson, Killacky, O'Connor, Abreu, Delaney and Heryman coerced Gardner into falsely implicating himself, and six other innocent young men in the murders. This coercion included keeping Gardner's mother out of the interrogation room, interrogating Gardner for over 15 hours, psychologically abusing Gardner, and telling him that he could go home if he gave a statement parroting back what the Defendant Officers told him. Exhausted and terrified, Gardner succumbed to the coercion, and agreed to give a statement that was fabricated by these Defendant Officers.

23.     Once Defendant Officers Villardita, Johnson, Killacky, O'Connor, Abreu, Delaney and Heryman obtained Gardner's false confession, they proceeded systematically to arrest and coerce

4

Plaintiff Paul Phillips, as well as Daniel Taylor, Akia Phillips, Joseph Brown, Deon Patrick and Rodney Matthews, into making false confessions.

24.     To coerce false confessions from Plaintiffs, Daniel Taylor, Akia Phillips, Joseph Brown, Deon Patrick and Rodney Matthews, Defendant Officers Villardita, Johnson, Killacky, O'Connor, Abreu, Delaney and Heryman perpetrated some of the following acts of abuse (among other misconduct) against each of those young men: (a) they isolated the young men from parents, family and other advisors for extended periods of time; (b) they threatened the young men, including with a gun, and yelled at them in a threatening manner; (c) they committed acts of physical abuse; (d) they refused to let the young men use the restroom, forcing them to urinate on themselves; (e) they deprived them of sleep and food; (f) they made false promises that the young men could go home if they confessed; and (g) they fed the young men information about the crime so that the "confessions" they involuntarily gave would appear consistent and reliable. In this way, the Defendant Officers overcame the Plaintiffs' and the other young men's wills and secured their false and fabricated confessions through improper means.

25.     The abuse and coercion of Paul Phillips included holding him for 24 hours without parents although he just turned 17, depriving him of sleep and food, yelling at him and pointing in his face, and promising him that he could go home if he cooperated and repeated the fabricated story that was being fed to him by the Defendants.

26.     The Defendant Officers never disclosed any of this misconduct to responsible authorities.

27.     The statements of Plaintiffs Paul Phillips and Lewis Gardner describe in detail the personal involvement of Daniel Taylor in the murders and Plaintiffs' interaction with him in

purposefully planning and committing the murders, as do those of their equally innocent criminal co-defendants Daniel Taylor, Deon Patrick, Akia Phillips, Rodney Mathews, and Joseph Brown.

28.     In Plaintiff Gardner's statement, given at 3:20 a.m. on December 3, 1992, he reported that Taylor was an active participant in a meeting to plan the murder, held at Clarendon Park at 7 p.m.; that he saw Daniel Taylor enter the building at 910 W. Agatite with four other persons; that, even though he was allegedly standing outside the building, he saw the persons who went in, including Daniel Taylor, kicking the apartment door in and arguing with the people about the money; and that he heard shots and then saw several people, including Daniel Taylor, running out of the building, yell out, then all leave the scene together.

29.     In Plaintiff Phillip's statement, given at 1:33 a.m. on December 4, 1992, he reported that Taylor was an active participant in a meeting to plan the murder, held at Clarendon Park on November 16 at 7 p.m.; that Taylor was outside Phillips' apartment at 854 W. Agatite immediately before the murder; that Phillips saw Taylor walk into the courtyard of 910 W. Agatite immediately before the murder; that he heard shots and then saw Daniel Taylor on Agatite immediately after the murder; that he then saw Daniel Taylor picked up and released from a police car; and saw Daniel Taylor eating pizza in Phillips' apartment just after the murder.

30.     Daniel Taylor, Deon Patrick, Akia Phillips, Rodney Mathews, and Joseph Brown gave statements that were almost identical to Plaintiffs'.

31.     All of these statements were demonstrated to be false because Daniel Taylor was in police custody at the time of the shootings.

32.     Thus, the statements of Plaintiffs and the other young men, each of which had Daniel

6

Taylor playing a leading role in the killings by planning a home invasion of the Lassiter apartment, participating in the home invasion, and being present when Lassiter and Haugabrook were killed, and leaving the scene directly after the murder, were shown to be false.

33.     Shortly after he gave his false confession, Taylor informed one or more of the Defendant Officers that he was in custody at the time of the murders, and the Defendants obtained documentary corroboration of Taylor's alibi, finding a copy of an arrest report that confirmed that Taylor was in police custody at the 23rd District for disorderly conduct at the time of the shootings.  A copy of Taylor's bond slip likewise confirmed that he had not been released from the 23rd District lockup until 10 p.m. on the night of the murders.

34.     The reports demonstrated that at 6:45 p.m. on November 16, 1992, Chicago Police officers in the 23rd Police District arrested Taylor on a disorderly conduct charge. Ten minutes later, Taylor was transported to the 23rd District for processing.

35.     According to these records, Taylor was received by the 23rd District lockup at 7:25 p.m. and his fingerprints were sent to Department Headquarters at 7:35 p.m.

36.     Further, these official records showed that at 10:00 p.m., Taylor bonded out of the 23rd District - more than an hour after the murders of Mr. Lassiter and Ms. Haugabook, which occurred within a few minutes of 8:43 p.m.

37.     Despite this evidence, Defendant Officers Villardita, Johnson, Killacky, O'Connor, Abreu, Delaney, Heryman, Glinski and Berti continued with their frame-up of Plaintiffs and their criminal co-defendants, Daniel Taylor, Deon Patrick, Akia Phillips, Rodney Mathews, and Joseph Brown, for the murders rather than search for the real killers.

38.     In order to frame Plaintiffs and the others, Defendant Officers Villardita, Johnson,

Killacky, O'Connor, Abreu, Delaney, Heryman, Glinski and Berti fabricated evidence, coerced witnesses and withheld exculpatory information, all in violation of Plaintiffs' constitutional rights.

39.     Because the official police records placed Daniel Taylor in custody at the time of the murder, Defendant Officers Villardita, Johnson, Killacky, O'Connor, Abreu, Delaney, Heryman, Glinski and Berti fabricated an encounter between Department officers and Taylor on the street near Mr. Lassiter's apartment at around 9:30 p.m. on November 16, 1992, when Taylor was actually in police custody.

40.     This false encounter was memorialized in a fraudulent police report prepared weeks after the purported encounter (and well after the Defendant Officers learned that Taylor was in custody at the time of the murder), by Defendants Glinski and Berti, working together with the other Police Defendants. The Defendant Officers did not disclose to the prosecutors, the court, Plaintiffs, or their attorneys the fact that they had fabricated the police report, in further violation of Plaintiffs' constitutional rights.

41.     In addition, the Defendant Officers coerced a witness named Adrian Grimes into falsely stating that he remembered seeing Taylor at a park near Mr. Lassiter's apartment just prior to the murder.  Mr. Grimes was coerced by means of threats and offers of leniency on his then-pending charges.

42.     The Defendant Officers never disclosed to the trial prosecutor or the defense the manner in which they unlawfully induced Mr. Grimes to falsely assert that he had seen Taylor at a park on the evening of the murder.  Mr. Grimes later recanted his false identification of Taylor.

43.     The Defendant Officers also tried, unsuccessfully, to coerce Faye McCoy into falsely

8

identifying Taylor in a lineup. When Ms. McCoy denied having seen Taylor or any of his criminal co-defendants from the neighborhood on the night of the murders, the Defendant Officers prepared an incomplete, misleading, and false report.

44.     The Defendant Officers also falsely asserted that Ms. McCoy did in fact identify Taylor, and they never disclosed either their attempted coercion of Ms. McCoy or the falsity of the report to the court, the prosecutors, Plaintiffs, or their attorneys.

45.     The Defendant Officers also withheld additional evidence corroborating the fact that Taylor was in police custody at the time of the murders.

46.     This evidence included that the Defendant Officers were able to identify Mr. Taylor's cellmate when Mr. Taylor was in the 23rd District lockup on November 16, 1992, a man named James Anderson.

47.     The Defendant Officers interviewed Mr. Anderson, who confirmed that Taylor was in police custody at the time of the shootings.

48.     Despite the obvious exculpatory value of that information, neither Mr. Anderson's identity nor the information he provided to the Defendant Officers was disclosed to the prosecutor or the defense.

49.     As a result of the Defendant Officers' misconduct, Plaintiffs Phillips and Gardner were wrongfully convicted of first-degree murder and sentenced to 30 years imprisonment. The only evidence against each Plaintiff was his coerced and fabricated statement. There was no physical evidence tying either Plaintiff to the crime and no eyewitness testimony implicating them.

50.     Without the Defendants' misconduct, Plaintiffs Phillips and Gardner would not have been prosecuted, convicted, or imprisoned.

9

51.     In June of 2014, after some of the evidence that the Defendant Officers had coerced, fabricated, and suppressed was revealed, Plaintiffs' convictions were vacated.

52.     On August 14, 2014, Plaintiffs Phillips and Gardner were each granted a Certificate of Innocence by the Circuit Court of Cook County. The Court found that each Plaintiff was innocent of all of the offenses for which he was wrongfully prosecuted, convicted and incarcerated.

53.     Plaintiffs Paul Phillips and Lewis Gardner, Daniel Taylor, and Deon Patrick have now all been fully exonerated and have received certificates of innocence, while the charges against Akia Phillips and Joseph Brown were dismissed before trial, and Rodney Mathews was acquitted by a jury.

54.     After the murders of Jeffrey Lassiter and Sharon Haugabook, the Defendant Officers, acting within the scope of their employment and under color of law, agreed among themselves and with other individuals to act in concert in order to deprive each Plaintiff of his constitutional rights, including his rights to due process, to not be forced to incriminate himself, and to a fair trial, all as described in the various paragraphs of this Complaint.

55.     Additionally, before and after each Plaintiff's convictions, the Defendant Officers further conspired to deprive each Plaintiff and his co-defendants of exculpatory information to which they were lawfully entitled and which would have led either to their not being charged, their acquittal, or their more timely exoneration.

56.     In this manner, the Defendant Officers, acting in concert with other unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

57.     In furtherance of the conspiracy, each of the co-conspirators engaged in and facilitated numerous overt acts, including but not limited to those set forth above - including fabricating evidence, withholding exculpatory evidence, coercing and fabricating false confessions, writing false reports, and committing perjury during hearings and trials, and was an otherwise willful participant in joint activities.

58.     As a direct and proximate result of the illicit prior agreement and actions in furtherance of the conspiracy referenced above, each Plaintiff's rights were violated, and each Plaintiff suffered injuries, including but not limited to, loss of liberty, physical injuries and emotional distress.

59.     The misconduct described herein was objectively unreasonable and was undertaken intentionally, with malice, willfulness, and deliberate indifference to each Plaintiff's rights.

60.     The constitutional violations that caused Plaintiffs' wrongful convictions were not isolated events. Rather, they were the result of the City of Chicago's policies and practices of, inter alia, pursuing wrongful convictions through reliance on profoundly flawed investigations and coerced and fabricated confessions, the failure to produce exculpatory material to criminal defendants, the failure to adequately train, supervise, monitor and discipline Chicago police officers, and the police code of silence.

61.     Consistent with the municipal policies and practices described above and below, Defendants in this case concealed exculpatory evidence in files and records which were never disclosed to Plaintiffs' criminal defense attorneys.

62.     The practices described above and below were consciously approved at the highest policy-making level for decisions involving the Department, and proximately caused the injuries

suffered here by each Plaintiff.

63.     The Defendant Officers' coercion of false statements from Plaintiffs and their criminal

co-defendants was also undertaken pursuant to, and proximately caused by, a policy and practice

on the part of the Department of using physically and psychologically coercive interrogation

tactics in order to elicit statements from suspects in criminal cases, which has caused false

confessions and led to numerous wrongful convictions.

64.     The wrongful convictions of innocent persons who gave coerced and false confessions

include numerous cases in which Department detectives used similar tactics to those employed

by the Officer Defendants against Plaintiffs and their co-defendants in this case. These tactics

include: (a) physical abuse; (b) psychological intimidation and manipulation; (c) fabrication of

confessions; (d) misleading of parents and denial of parents' access to their children during

interrogations; (e) concealment of exculpatory information; (f) false promises of leniency in

exchange for "cooperation" in the form of a confession; and (g) use of other unlawful tactics to

secure the arrest, prosecution, conviction, and imprisonment of innocent persons.

65.     At the time of the events leading to Plaintiffs' coerced confessions and wrongful

convictions, members of the Chicago Police Department, including, but not limited to, the

Defendant Officers, systematically promoted the improper prosecutions of teenagers and other

vulnerable individuals by using abusive and coercive interrogation tactics to force them to

confess to crimes they did not commit.

66.     Consistent with the municipal policy and practices described above and below, members

of the Department, including but not limited to, the Defendant Officers, systematically

suppressed evidence pertaining to these fabricated and coerced confessions, both from the Cook

County State's Attorney's Office and from criminal defendants and their attorneys.

67.      As a matter of both policy and practice, municipal policy makers and department

supervisors condoned and facilitated a code of silence within the Chicago Police

Department.  In accordance with this code, Department Officers, including, but not limited to,

the Defendant Officers, refused to report and otherwise lied and committed perjury about

misconduct committed by their colleagues, including the misconduct at issue in this case.

68.      As a result of the City of Chicago's established practice of not tracking and identifying

police officers who are repeatedly accused of the same kinds of serious misconduct; failing to

investigate cases in which the police are implicated in obtaining coerced and false confessions,

as well as wrongful charges and convictions; failing to discipline officers accused of this

unlawful conduct; and facilitating a code of silence within the Department, Chicago police

officer, including the Defendant Officers named herein, have come to believe that they may

violate the constitutional rights of members of the public and cause innocent persons to be

charged with serious crimes without fear of adverse consequences.

69.      The City's failure to train, supervise, monitor and discipline its officers effectively

condones, ratifies, and sanctions the kind of misconduct that the Defendant Officers committed

against Plaintiffs in this case.  Constitutional violations such as occurred in this case are

encouraged and facilitated as a result of the City's practices and *de facto* policies, as alleged

above, and these policies and practices were a moving force behind these violations.

70.      The City of Chicago and officials within the Chicago Police Department failed to act to

remedy the abuses described in the preceding paragraphs, despite actual knowledge of the pattern

of misconduct.  They thereby perpetuated the unlawful practices and ensured that no action

13

would be taken to remedy Plaintiffs' ongoing injuries.

71.      The policies and practices described in the foregoing paragraphs were consciously approved by City of Chicago policymakers who were deliberately indifferent to the violations of constitutional rights described herein.

72.      Each Plaintiff spent 15 years in prison for crimes that he did not commit, as well as being on supervised release for 3 years thereafter, and living with the stigma of his wrongful conviction until he was fully exonerated.

73.      Additionally, each Plaintiff has suffered great emotional pain and suffering, limitation on his physical freedom and physical pain and suffering as a result of his wrongful prosecution, conviction and incarceration.

## COUNT I - 42 U.S.C. § 1983
## Fifth and Fourteenth Amendments

74.      Each paragraph of this Complaint is incorporated as if restated fully herein.

75.      In the manner described more fully above, the Defendant Officers, individually, jointly, and in conspiracy with one another, as well as under color of law and within the scope of their employment, forced each Plaintiff to incriminate himself falsely and against his will, in violation of his rights secured by the Fifth and Fourteenth Amendments.

76.      As described more fully above, the Defendant Officers conducted an unconstitutional interrogation of each Plaintiff, which caused each Plaintiff to make involuntary statements implicating himself in the murders of Jeffrey Lassiter and Sharon Haugabook.

77.      The false statements, which were scripted and coerced by the Defendant Officers and attributed to each Plaintiff, were used against each Plaintiff to his detriment in the criminal case.

14

These statements were the only reason that each Plaintiff was prosecuted and convicted of the murder of Jeffrey Lassiter.

78.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, and with reckless indifference to each Plaintiff's clearly established constitutional rights.

79.     As a result of the Defendants' unconstitutional conduct as described in this Count, each Plaintiff suffered injuries, including, but not limited to, physical injury, loss of liberty, and emotional distress.

**COUNT II - 42 U.S.C. § 1983**
**Violation of Due Process**

80.     Each paragraph of this Complaint is incorporated as if restated fully herein.

81.     As described more fully above, all of the Defendant Officers, while acting individually, jointly, and/or in concert and in conspiracy, as well as under color of law and within the scope of their employment, deprived each Plaintiff of his constitutional right to a fair trial.

82.     In the manner described more fully above, the Defendant Officers, individually, jointly, and/or in concert and in conspiracy, fabricated false reports, statements, and other evidence, and/or deliberately withheld exculpatory evidence.  In doing so, the Defendants violated their clearly established duty to report all exculpatory and impeachment information to prosecutors.

83.     Absent Defendants' misconduct, the prosecution of each Plaintiff could not and would not have been pursued, and each Plaintiff would not have been convicted.

84.     The Defendants' misconduct directly and proximately caused the unjust and wrongful criminal conviction of Plaintiffs and their continuing wrongful imprisonment, thereby denying

15

them their constitutional right to a fair trial, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

85.     As a direct and proximate result of this violation of his constitutional right to a fair trial, each Plaintiff suffered injuries including but not limited to, loss of liberty, physical injury and emotional distress.

86.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice and willful indifference to each Plaintiff's clearly established constitutional rights.

## COUNT III - 42 U.S.C. § 1983
## Failure to Intervene

87.     Each paragraph of this Complaint is incorporated as if restated fully herein.

88.     In the manner described above, by their conduct and under color of law, during the commission of the constitutional violations described herein, one or more of the Officer Defendants did not intervene to prevent the violation of each Plaintiff's constitutional rights, even though each had the duty and opportunity to do so.

89.     As a direct and proximate result of the Defendants' failure to intervene to prevent the violation of each Plaintiff's constitutional rights, Plaintiffs suffered injuries, including, but not limited to, loss of liberty, physical harm, and emotional distress. These Defendants had a reasonable opportunity to prevent this harm, but failed to do so.

90.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice and willful indifference to Plaintiffs' clearly established constitutional rights.

16

## COUNT IV - 42 U.S.C. § 1983
## Monell Policy Claims

91.     Each paragraph of this Complaint is incorporated as if restated fully herein.

92.     The actions of all the individual Defendant Officers were undertaken pursuant to policies, practices, and customs of the Chicago Police Department, described above, which were approved, encouraged, and/or ratified by policymakers for the City of Chicago with final policymaking authority.

93.     These policies and practices included the failure to adequately train, supervise, monitor, and discipline officers who engaged in the constitutional violations, as set forth in greater detail above, pursuing wrongful convictions through reliance on profoundly flawed investigations and coerced and fabricated confessions, the failure to produce exculpatory material to criminal defendants, and the police code of silence

94.     One or more of the policies, practices, and customs described in this Count were maintained and implemented by the City of Chicago with deliberate indifference to Plaintiffs' constitutional rights and were a moving force behind the violations of those rights.

95.     As a direct and proximate result of the City's actions and inactions, Plaintiffs' constitutional rights were violated, and they suffered injuries and damages, as set forth in this Complaint.

## COUNT V - State Law Claim
## Malicious Prosecution

96.     Each paragraph of this Complaint is incorporated as if restated fully herein.

97.     The Defendant Officers accused Plaintiffs of criminal activity knowing those accusations to be without genuine probable cause, and they made statements to prosecutors with

17

the intent of exerting influence and to institute and continue the judicial proceedings.

98.     The Defendant Officers caused Plaintiffs to be improperly subjected to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in each Plaintiff's wrongful prosecution, conviction and imprisonment, and the consequent injuries set forth above.

99.     Statements of the Defendant Officers regarding Plaintiffs' alleged culpability were made with knowledge that said statements were false.  The Defendant Officers also fabricated evidence by coercing false inculpatory statements from Plaintiffs and their co-defendants and by withholding exculpatory evidence that would have demonstrated Plaintiffs' innocence. The Defendants were aware that, as described more fully above, no true or reliable evidence implicated Plaintiffs in the Lassiter and Haugabook murders.

100.    The Defendant Officers intentionally withheld from, and misrepresented to, prosecutors facts that further vitiated probable cause against Plaintiffs, as set forth above, and failed to investigate evidence which would have led to the actual perpetrators.  The Defendant Officers withheld the facts of their manipulation and the resulting fabrications from Plaintiffs' and their attorneys.

101.    The misconduct described in this Count was undertaken intentionally, with malice, willfulness, and reckless indifference.

102.    On June 24, 2014 the prosecutions terminated in each Plaintiff's favor when each Plaintiff's conviction was vacated, and that favorable termination was further established when each Plaintiff obtained his certificate of innocence on August 14, 2014.

103.    As a direct and proximate result of this misconduct, Plaintiffs sustained, and continue to

sustain, injuries as set forth above, including physical injury and emotional distress.

**COUNT VI - State Law Claim**
**Intentional Infliction of Emotional Distress**

104.    Each paragraph of this Complaint is incorporated as if restated fully herein.

105.    The acts and conduct of the Defendant Officers as set forth above were extreme and outrageous. The Defendants' actions were rooted in an abuse of power or authority, and they were undertaken with intent to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Plaintiffs, as is more fully alleged above.

106.    As a direct and proximate result of the Defendant Officers' actions, each Plaintiff suffered and continues to suffer physical injury and severe emotional distress.

**COUNT VII - State Law Claim**
**Civil Conspiracy**

107.    Each paragraph of this Complaint is incorporated as if restated fully herein.

108.    As described more fully in the preceding paragraphs, the Defendant Officers, acting jointly and in concert with other known and unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

109.    In furtherance of this conspiracy, the Defendant Officers committed overt acts and were otherwise willful participants in joint activity, including but not limited to, the malicious prosecution of Plaintiffs and the intentional infliction of emotional distress upon them.

110.    The misconduct described in this Count was undertaken intentionally, with malice, willfulness, and reckless indifference.

111.    As a direct and proximate result of the Defendants' conspiracy, Plaintiffs suffered

19

damages, including physical injury and severe emotional distress, as is more fully alleged above.

**COUNT VIII - State Law Claim**
**Respondeat Superior**

112. Each paragraph of this Complaint is incorporated as if restated fully herein.

113. In committing the acts alleged in the preceding paragraphs, each of the Defendant Officers was a member and agent of the Chicago Police Department and the City of Chicago, acting at all relevant times within the scope of his employment and under color of law.

114. Defendant City of Chicago is thereby liable as principal for all state law torts committed by the Defendant Officers as alleged herein, including malicious prosecution, infliction of emotional distress, and conspiracy.

**COUNT IX - State Law Claim**
**Indemnification and Ill. Rev. Stat. 10/9-102**

115. Each paragraph of this Complaint is incorporated as if restated fully herein.

116. Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable for acts within the scope of their employment.

117. The Defendant Officers are or were employees of the Chicago Police Department, who acted within the scope of their employment in committing the misconduct described in each and every count alleged herein.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Paul Phillips and Lewis Gardner demand compensatory damages, jointly and severally, from Defendants City of Chicago, Anthony Villardita, Thomas Johnson, Brian Killacky, Terry O'Connor, Rick Abreu, Robert Delaney, Robert Heryman, Sean Glinski and Michael Berti and, because the Officer Defendants acted in a malicious, willful and/or wanton manner toward Plaintiffs, they further demand punitive damages against the Officer Defendants, plus attorneys' fees, the costs of this action, and whatever additional relief this Court deems equitable and just.

**JURY DEMAND**

Plaintiffs Paul Phillips and Lewis Gardner demand a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Respectfully Submitted,

s/ John L. Stainthorp
John L. Stainthorp, G. Flint Taylor
People's Law Office
1180 N. Milwaukee Ave.
Chicago, IL 60642
773 235 0070

Attorneys for Paul Phillips and Lewis Gardner